(79 South. 322)

No. 23118.

STATE v. CUTRERA et al.

(June 29, 1918.)

*(Syllabus by Editorial Staff.)*

1. Homicide ⊛203(5) — Evidence — Dying Declaration—Hope of Recovery.

The accusing declaration made by one not under oath or subject to cross-examination is inadmissible against the accused as a dying declaration, unless there is evidence showing to the satisfaction of the legal mind that the accuser when making it had no hope of recovery.

2. Homicide ⊛203(3)—Dying Declaration—Hope of Recovery—Evidence.

In a prosecution for murder, evidence *held* not to show that the deceased believed that he had no hope of recovery and was about to die when he accused defendants of having shot and cut him.

3. Homicide ⊛203(5)—Dying Declarations—Evidence.

Where the evidence did not show that deceased when he made a declaration accusing defendants was without hope of recovery, the testimony of the deputy sheriff as to what deceased had said shortly after his injury was inadmissible as a dying declaration.

Appeal from Twenty-Ninth Judicial District Court, Parish of St. Bernard; R. Emmet Hingle, Judge.

Louis Cutrera and Seymour Cutrera were convicted of murder, and they appeal. Verdict and sentence annulled, and cause remanded with directions.

Oliver S. Livaudais and Fernando Estopinal, both of New Orleans, and Fred A. Ahrens,

for appellants. A. V. Coco, Atty. Gen. N. H. Nunez, Dist. Atty., of St. Bernard (Vernon A. Coco, of New Orleans, of counsel), for the State.

O'NIELL, J. The defendants, appellants, were convicted of murder, without capital punishment, and sentenced to life imprisonment.

They complain of a ruling of the district judge, admitting in evidence against them, as a dying declaration, a statement made by the victim of the homicide, accusing them of the crime.

The objection to the evidence was and is that there was not sufficient proof to satisfy the legal mind that the deceased believed he was about to die, when he made the accusing declaration. That objection may be divided into two; the first being that there was not sufficient proof that the deceased made the statements which the court considered an abandonment of all hope of recovery, and the second being that the statements attributed to the deceased did not, with all the surrounding circumstances, make proof that the man had abandoned all hope of recovery, when he made the accusing declaration.

[1] This court, in State v. Gianfala, 113 La. 463, 37 South. 30 (on rehearing), adopted the opinion, borne out by a preponderance of legal authority, that an accusing declaration made by a person not under oath nor subject to cross-examination is not admissible in evidence against the accused person, in a criminal prosecution, as a dying declaration, unless there is evidence showing to the satisfaction of the legal mind that the person making the accusation had, at the time, no hope of recovery.

The only evidence offered in this case to show that the deceased had no hope of recovery when he made the accusing declaration is the testimony of a deputy sheriff to whom the declaration was made. The officer arrived at the scene of the crime 1½ or 2 hours after the man had been shot and stabbed. The wounded man was yet lying where he had fallen on the ground. He was an Italian, but spoke both English and his native language. The officer, however, brought an Italian interpreter, who was present, listening to all that was said and translating into English what was said in Italian, during all of the time the wounded man was talking to the officer. There were also a number of soldiers and at least four other bystanders present during the conversation between the deputy sheriff and the wounded man.

The only witnesses who were called to prove that the statement was a dying declaration were the deputy sheriff and the Italian interpreter. Although the deputy sheriff testified that the interpreter "was right there" listening to the conversation and translating what was said in Italian by the wounded man, and although the interpreter himself testified that he came to the wounded man with the deputy sheriff and left with him, and therefore should have heard all that was said, the interpreter swore that the wounded man did not say anything, except that Seymour Cutrera had shot him and that Louis Cutrera had cut him.

The testimony of the interpreter was excluded by the judge, and the jury was instructed to disregard it, on the objection of the attorneys for the defendants, on the ground that it was not shown to have been a dying declaration, notwithstanding all of the testimony of the deputy sheriff on that subject had been heard and he had been allowed to relate to the jury the accusing declaration made by the wounded man. In fact, no evidence whatever was offered, after the deputy sheriff testified, to prove that the accusing statement made by the wounded man was a dying declaration.

It is argued on behalf of the state that the

ruling, excluding the testimony of the interpreter, was founded upon the erroneous opinion of the judge that the testimony was inadmissible merely because that witness had not heard the wounded man say he believed he was about to die, even though there was other proof that the wounded man did believe he was about to die, when he made the accusing statement. That idea is not clearly expressed in the statement per curiam. On the contrary, the ruling excluding the testimony of the interpreter, on the ground that there was not sufficient proof that the accusing statement related by him was a dying declaration, was, in effect, an admission by the judge that he was not yet convinced that the statement was a dying declaration, even though he had heard all of the evidence that was offered on the subject and had already permitted the deputy sheriff to relate the same accusing statement as a dying declaration of the wounded man.

The testimony of both the deputy sheriff and the interpreter shows that the latter must have heard all that the deputy heard, of what the wounded man said when he accused the defendants of having shot and stabbed him. The interpreter understood all that was said, either in English or in Italian; whereas, the deputy sheriff understood only what was said in English. And both witnesses testified that some of the wounded man's statements were in Italian and others in English. It is not contended that one of the witnesses was more worthy of belief than was the other; nor was there any intimation in the testimony that the interpreter might have forgotten any part of what the wounded man said. On the contrary, the interpreter's knowledge that the only purpose of his being brought into the presence of the wounded man was to hear and translate what the man had to say must have impressed upon him the importance of hearing and remembering all that the man had to say. Under those circumstances, we cannot under-

stand why the judge's reason for excluding from the jury the testimony of the interpreter was not applied also to the testimony of the deputy sheriff.

Before relating to the jury what the wounded man had said, the deputy sheriff testified, in the absence of the jury, that, as soon as he and the interpreter arrived, he asked Ferrara who had shot him, and the man replied that Louis Cutrera had cut him and that Seymour Cutrera had shot him. Asked what the man then said, if anything, about his condition, the witness replied that the man said, "Well, I don't believe I am going to live long;" and that that was all he said. The witness was asked whether the interpreter was then present, and replied:

"Yes, sir; he was right there. I even said to the young Italian, 'You ask him in Italian who cut him and who shot him,' and he asked him, and he told me in English what this man said."

On cross-examination, the deputy sheriff was asked to relate all that was said from the time he and the interpreter arrived at the scene of the homicide, and he replied:

"When I got down on my knees, I asked him, I says, 'How do you feel?' He says: 'I am going to die soon. Take me to the hospital as quick as you can.' And of course I got a stretcher and put him on (it) right away. He kept moaning a whole lot, and I laid him on the truck," etc.

The wounded man was taken to the hospital in New Orleans, where he died, 4½ or 5 hours after being wounded; that is, between 2½ and 3½ hours after telling the deputy sheriff who had shot and cut him.

[2] The evidence does not satisfy us that the wounded man believed—to the extent that he had no hope of recovery—that he was about to die, when he accused the defendants of having shot and cut him. In the case of State v. Gianfala, the desire of the wounded man, who had said he was going to die, to be taken to the hospital, was considered sufficient evidence of some hope

of recovery to render his accusing statement inadmissible in evidence as a dying declaration.

[3] The evidence against the defendants in this case, excepting the so-called dying declaration, was only circumstantial. The crime was committed in the dark. If the wounded man had lived to make his accusation under oath, and be cross-examined upon his reason for accusing the defendants of the crime, the effect of his statement might have been destroyed, or it might have been rendered altogether inadmissible. The constitutional right of a defendant in a criminal prosecution to be confronted by the witnesses against him is worth very little indeed when it is applied to a witness who relates what some one else said, as a dying declaration; for the cross-examination is then confined to the circumstances under which the declaration was made, and it affords no opportunity for exposing or investigating the source of knowledge, or reason for the statement, of the author of the accusing declaration.

Our conclusion is that the testimony of the deputy sheriff, relating what the wounded man said, was not admissible in evidence as a dying declaration. It is therefore not necessary to consider the other bills of exception, relating to the rulings, refusing a continuance, etc.

The verdict and sentence appealed from are annulled, and the case is remanded to the district court to be proceeded with according to law.